# 𝔍n the 𝔘nited 𝔖tates 𝔠ourt of 𝔉ederal 𝔠laims

## No. 11-53C
### (Filed: May 31, 2012)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| **JEFFREY C. MIGLIONICO,** | **Military Temporary Living Allowance; Overpayment; Debt; Government Counterclaim; Review of Decision of Defense Office of Hearings and Appeals; Joint Federal Travel Regulation U4129-E; 28 U.S.C. § 1491(a)(1); 31 U.S.C. § 3702; 37 U.S.C. § 474; 37 U.S.C. § 202; Justiciability.** |
| **Plaintiff,** | |
| **v.** | |
| **THE UNITED STATES,** | |
| **Defendant.** | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Gary Meyers, 78 Clark Mill Road, Weare, NH, for Plaintiff.

Kent C. Kiffner, Douglas G. Edelschick, Tony West, Jeanne E. Davidson, and Reginald T. Blades, Jr., U.S. Department of Justice, Commercial Litigation Branch, Civil Division, PO Box 480, Ben Franklin Station, Washington, DC, for Defendant. Lt. Christopher Jeter, Office of the Judge Advocate General, General Litigation Division, of Counsel.

_____

## OPINION AND ORDER
_____

**WILLIAMS,** Judge

On January 25, 2011, Plaintiff Jeffery C. Miglionico filed this suit following his retirement from the United States Marine Corps Reserves ("Reserves") after he was found to have committed conduct "unbecoming of an officer and a gentleman" for submitting unauthorized temporary living allowance ("TLA") requests. Plaintiff claimed and received per diem payments while residing on a boat owned by his corporation during his two-year period of temporary active duty. Defendant contends that Plaintiff is not entitled to $59,317.50 in living expenses because the Joint Federal Travel Regulations, which prohibit reimbursement for the cost of lodging with friends or relatives, do not permit Plaintiff to be reimbursed for rent he paid to a corporation owned by himself and his wife. Upon discovering these erroneous payments, the Government withdrew $8.295.30 that it had initially paid Plaintiff and issued a notice of debt for an additional $51,022.20 that it had provided to Plaintiff in rental reimbursements. Plaintiff challenged the collection and debt at the Defense Office of Hearings and Appeals ("DOHA"), but DOHA upheld the determination of Plaintiff's indebtedness. Plaintiff seeks repayment of the

$8.295.30 and an order eliminating all debts allegedly owed to the United States.[1]  Defendant filed a counterclaim seeking $51,022.20, representing payments for travel and lodging made to Lt. Col. Miglionico while he was on active duty.

Plaintiff also seeks equitable relief stemming from the Navy's convening of a Board of Inquiry ("BOI") to evaluate Plaintiff's continued retention in light of the alleged improper reimbursement claims for living on the boat.  The BOI found that Plaintiff violated Article 133 of the Uniform Code of Military Justice ("U.C.M.J.") and recommended that he be retired at his then current rank -- a recommendation that the Secretary of the Navy accepted.  Plaintiff then petitioned the Board for Correction of Naval Records ("BCNR") to correct his personnel record, but the BCNR denied his request, finding no error in the BOI's decision.  Plaintiff contends that the BCNR's decision is arbitrary and capricious and asks this Court for an order removing all references to the BOI and his retirement from his Official Military Personnel File, and reinstating him in the Marine Corps Reserves as of the date of his retirement.

Pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), the parties filed cross-motions for judgment on the administrative record.  Plaintiff argues that the decisions of DOHA and BCNR were arbitrary and capricious.  The Court cannot review Plaintiff's claims concerning the BCNR's decision because they are nonjusticiable, but upholds DOHA's decision, and grants Defendant's motion for judgment on the administrative record.  Further, because Plaintiff was not entitled to the reimbursements he received, Defendant's counterclaim is granted.

## **Findings of Fact**[2]

## **Active Duty and Rental of Living Quarters**

On May 30, 2006, Plaintiff, a lieutenant colonel in the Reserves, received an order to report to Miramar, California for 124 days of active duty-special work, beginning immediately and ending on September 30, 2006.  AR 354.  The order authorized temporary quarters at $26 per day, or, if temporary quarters were unavailable, alternative housing at $127 per day for May 30-31 and $120 per day for June 1 through September 30.  AR 355.  When he reported to Miramar, Plaintiff could not obtain temporary quarters and began looking for off-base housing in the area.  AR 16, 59.

Plaintiff is the registered agent and president of JKMIG, Inc., a California Subchapter S corporation formed in 2003.[3]  AR 273-74; 26 U.S.C. § 1361 (2011).  Plaintiff's wife is the

---

[1]  On June 22, 2011, Plaintiff filed an amended complaint, adding the prayer for $8.295.30.  Plaintiff's original complaint sought only equitable relief.

[2]  The findings are derived from the Administrative Record and the appendices to the parties' motion papers.

[3]  The original corporate entity was named Diet Delicious, Inc., and was in the diet and health food business.  AR 9.  In 2005, the corporation changed its business purpose to property rental and was renamed JKMIG, Inc.  AR 5.

corporate secretary, AR 44, and no other officers are listed in its corporate filing.  AR 273-74.
Since 2005, JKMIG "has been in the business of buying, selling, and renting properties."  AR 9.
On August 2, 2006, JKMIG purchased a 25-foot boat.  AR 17, 44.  On August 4, 2006, Plaintiff
signed a lease agreement to rent living quarters on the boat, effective that day, and Plaintiff's
wife signed on JKMIG's behalf as the landlord.  AR 85-90.  The lease provided for rent of
$3,450 per month, or $115 per day, and a term of August 4, 2006 through June 30, 2007.  Id.

Plaintiff's active duty service was subsequently extended by a series of orders, and he
ultimately served on active duty until May 31, 2008.  AR 34-41.  He claims to have resided on
the boat rented from JKMIG the entire time.  AR 44.  Plaintiff sought TLA reimbursements for
the rent paid to his corporation during his two years of active duty.  Id.  On June 20, 2008, the
Government withdrew $8,295.30 from Plaintiff's account, representing an offset against the
Government's calculation of Plaintiff's total travel and lodging debt.  Id.

On July 7, 2008, the Marine Corps Mobilization Command ("MOBCOM") sent a
memorandum to Plaintiff stating that an audit of his pay account indicated that he had received
$51,022.20 in unauthorized TLA reimbursements.  AR 375.  The memorandum did not explain
why the Marines determined that Lt. Col. Miglionico had been overpaid, but it requested
repayment within 45 days of receipt.  Id.  The memorandum informed Lt. Col. Miglionico that he
had the right to inspect government records related to the debt, review all decisions related to the
debt, and seek a waiver or remission of the debt.  Id.  There is no evidence in the record that
Plaintiff requested to review the decision or related records.

In October 2008, MOBCOM sent a letter to the Defense Finance and Accounting Service
("DFAS"), seeking a higher level opinion about Plaintiff's receipt of TLA reimbursements when
he "was renting a boat from his own business."  AR 83-84.  On November 6, 2008, DFAS issued
an opinion concurring with MOBCOM's determination, finding that the transaction violated the
Joint Federal Travel Regulations because it was not arm's-length.  AR 26-28.  Chapter 4 of the
Regulations provides: [n]o cost for lodging is allowed if a member stays with friends/relatives . .
. even if payment of lodging is made to friend/relative."  U4129-E.  DFAS reasoned:

> [t]he member is correct that the corporation is a separate and distinct entity for tax
> purposes . . . .  However, since the member is the president of the corporation, his
> wife is listed as the Secretary of the corporation, and there is no evidence that
> there are any other owners in the corporation, there is indication that the member
> is in fact renting the boat from himself and family members.

AR 27.  DFAS's opinion stated that if Lt. Col. Miglionico did not agree with the decision, he
could file a rebuttal, which DFAS would forward to DOHA.  Id.  Plaintiff submitted a rebuttal in
November 2008.  AR 42-47.

## Defense Office of Hearings and Appeals Proceedings

Plaintiff appealed DFAS's decision to DOHA on November 26, 2008.  AR 42-47.
DOHA's jurisdiction is derived from 31 U.S.C. § 3702(a)(1)(A) (2011), which states: "The
Secretary of Defense shall settle claims involving uniformed service members' pay, allowances,

travel, transportation . . . ." Department of Defense Directive 1340.20 vested the General Counsel of the Department of Defense with the authority to develop claim settlement and decision policies and directed heads of the Department of Defense components to establish procedures for processing claims. Department of Defense, Settling Personnel and General Claims and Processing Advance Decision Requests, Directive 1340.20 (2003).

Plaintiff's argument to DOHA focused on JKMIG and his belief that renting from a corporation was permissible. AR 42-47. He explained that he decided to rent the boat because rent was an allowable expense under the Joint Federal Travel Regulations, while only mortgage interest and property taxes were reimbursable for residing in purchased properties while on temporary duty. AR 43. Further, he reasoned that renting from JKMIG was permitted "because a servicemember may have a familiar relationship with the renting entity . . . provided the transaction in question was still conducted at arm's-length." AR 43-44. Plaintiff added that he never hid the fact that he was renting the boat from his S corporation, he did not receive a paycheck from JKMIG while living on the boat, and JKMIG paid taxes on the income received from leasing the boat. AR 44. Plaintiff also asserted that it was illegal for the Marines to withhold his pay without a court judgment because he had not admitted the debt and the Secretary of Defense did not submit a special order on the matter. AR 45.

On February 12, 2009, DOHA upheld DFAS's determination, reiterating that Plaintiff was not entitled to TLA reimbursements. AR 16-22. DOHA explained that Lt. Col. Miglionico needed to prove, by clear and convincing evidence, that the Government was liable for the amount claimed, and all relevant evidence should be presented when a claim is first submitted. AR 19 (citing Department of Defense Instructions 1340.21, enclosure 5, paragraph E5.7). DOHA pointed out that the record did not contain any rental receipts, which alone could defeat Plaintiff's claim. AR 19. However, DOHA based its decision on the evidence presented and emphasized the absence of separation between Lt. Col. Miglionico and his corporation, stating:

> You have emphasized that you rented the boat from JKMIG, Inc. But the record does not show that JKMIG has or has had any shareholders other than you and your wife. Your own memorandum of November 26, 2008, clearly shows that JKMIG purchased the boat for the specific purpose of providing you with quarters for your tour at MCAS Miramar, which establishes that JKMIG was acting as your agent. The record also does not show that JKMIG engages in, or has ever engaged in, the business of leasing either living quarters or water craft on a routine basis . . . . Finally, your memorandum of November 26, 2008, shows that you chose to rent the boat from JKMIG, rather than buy it outright, because rental reimbursement was more remunerative than purchases under [Joint Federal Travel Regulation].

AR 20.

In making its decision, DOHA cited DOHA Claims Case No. 04020503, February 18, 2004, a situation that presented facts similar to those in this case. AR 18, 22-25. In that matter, a member of the Air National Guard who lived in Vermont was directed to report for four months of temporary duty at a base in Arizona. AR 22. The service member signed a rental

lease for a home in Tucson, Arizona.  Id.  However, similar to Lt. Col. Miglionico's arrangement, the service member and his wife jointly owned the house, and his wife signed the lease as the landlord.  Id.  When the lease was signed, a property management company was managing the property.  Id.  The service member submitted vouchers for reimbursement, which DFAS denied "on the grounds that he had essentially lodged in his own house."  AR 23.  DOHA upheld DFAS's determination, citing the Joint Federal Travel Regulations that prohibit reimbursement for lodging from a friend or relative and the Comptroller General's interest in eliminating "potential abuses from occurring in connection with claims involving lodging with friends and relatives."  Id.  In disallowing Lt. Col. Miglionico's claim, DOHA cited its earlier decision for the premise that "a Government traveler cannot be reimbursed for quarters that were leased from the traveler and/or the traveler's spouse."  AR 20.  DOHA concluded that Plaintiff "rented the boat from [his] wife and [himself]."  Id.

On February 25, 2009, Plaintiff requested reconsideration from DOHA, arguing that JKMIG satisfied the legal requirements to be treated as a separate entity, that JKMIG charged him for the expenses that it incurred in leasing the boat, that JKMIG had been in the real estate business for more than four years, and that he was in compliance with the Joint Federal Travel Regulations because rental from corporations was not excluded.  AR 8-15.  Lt. Col. Miglionico also provided copies of his monthly travel vouchers and JKMIG's receipts.  AR 8.

On March 30, 2009, DOHA issued a Claims Appeals Board Reconsideration decision and upheld DOHA's initial determination that Lt. Col. Miglionico had been wrongfully reimbursed for unauthorized travel expenses.  AR 3-7.  Once again, DOHA rejected Lt. Col. Miglionico's arguments that JKMIG was a distinct legal entity and that renting housing from it was within the parameters of the Joint Federal Travel Regulations.  AR 5-6.  DOHA's opinion stated: "DFAS, the Marine Corps and our adjudicators did not find any distinction between the corporation (JKMIG) and the member and his wife."  AR 5.  DOHA also noted that the lease allowed one additional adult and child, identified as Plaintiff's wife and child, to stay on the boat for "temporary use."[4]  AR 6 n.3.  DOHA found that having the landlord occupy the "rental property" suggested it was not an arm's-length transaction.  Id.  DOHA also relied upon decisions of the Comptroller General, stating:

> The per diem allowance authorized by statute is for the purpose of reimbursing members for the more than normal expenses to which they are put in obtaining quarters and subsistence while in a transient status.  In this case, since the member was paying rent to a corporation owned by himself, there was no rental expense to reimburse. . . .  The member has not provided information regarding business activities of the corporation other than the rental agreement leasing the yacht to himself.  The existence of a corporation in which the member is the president does not satisfy the Comptroller General's concern with the potential abuses that may occur in connection with claims involving lodging with friends or relatives.  While the government reimburses costs of lodging which are incurred through a business relationship, we do not see this as such an arrangement.

---

[4]   The lease allowed Plaintiff to have his wife (the landlord) and child as temporary guests.  AR 85.  Plaintiff was required to pay $50 each month for any other guest that stayed for more than 72 hours.  Id.

AR 5-6 (citations omitted).  DOHA concluded that Plaintiff's rental agreement with JKMIG was not an arm's-length transaction.  AR 6.

**Board of Inquiry Proceedings**

On May 29, 2008, just before Plaintiff's active duty was to end, Plaintiff received notice from the Marine Corps that he would be placed on legal hold pending a Naval Criminal Investigative Service inquiry into potential fraud against the government.  AR 332.  The investigation found that Lt. Col. Miglionico charged the government $115 per day for his temporary lodging on the boat when his actual expenses were approximately $20 per day.  AR 286.  Under the hold, Lt. Col. Miglionico's orders were involuntarily extended until the investigation and any resulting criminal proceedings were complete.  Id.  The legal hold was terminated effective June 4, 2008, but Plaintiff was informed that he could still be subject to administrative action.  AR 333.

On September 29, 2008, the Commander of the Marine Forces Reserves directed Lt. Col. Miglionico to show cause why he should be retained in the Reserves.  AR 287.  A BOI was convened and considered three charges against Plaintiff: (1) violation of Article 92, U.C.M.J. for failure to obey an order or regulation by "wrongfully claiming reimbursement for living on a boat that was purchased and owned by him and his wife," (2) violation of Article 132, U.C.M.J., for fraud against the United States by preparing and submitting travel vouchers when he was not in fact paying rent, and (3) violation of Article 133, U.C.M.J., for conduct unbecoming of an officer and a gentleman because he attempted to use a corporation to circumvent the Joint Federal Travel Regulations.  AR 338.

The BOI found that Plaintiff committed misconduct with respect to the third charge when he circumvented the Joint Federal Trade Regulations by renting the boat from his closely held corporation.[5]  AR 338.  The BOI found that Lt. Col. Miglionico never made any actual rental payments to JKMIG, even though he submitted receipts to support his travel claims.  AR 286-87.  The BOI determined that "[a]ll funds Lieutenant Colonel Miglionico collected from the government through travel claims went directly into his personal banking accounts and were used to pay off the yacht loan of approximately $30,000."  AR 286.  The BOI also noted that the marina Lt. Col. Miglionico claimed to live at prohibited owners from living on docked vessels and did not allow corporate-owned vessels.  AR 287.

The BOI recommended that Plaintiff be retired as a lieutenant colonel, which was his then current grade.  AR 339.  However, on June 22, 2009, the Commandant of the Marine Corps recommended that Plaintiff be retired as a major, one rank lower, because of the seriousness of his misconduct.  AR 286-88.  The Secretary of the Navy ordered that Lt. Col. Miglionico be

---

[5]  A closely held corporation is defined as "[a] corporation whose stock is not freely traded and is held by only a few shareholders (often within the same family)."  Black's Law Dictionary (9th ed. 2009).  As discussed above, Plaintiff is the president of JKMIG, his wife is the secretary, and there is no evidence that it has any other officers or shareholders.

retired as a lieutenant colonel and approved a time-in-grade waiver.[6]  AR 289.  Plaintiff retired from the Reserves effective August 1, 2009.  AR 496.

## Board for Correction of Naval Records Proceedings

On December 17, 2009, Plaintiff petitioned the BCNR for correction of his record.  AR 291-93.  Specifically, Lt. Col. Miglionico requested: (1) elimination of all references to the BOI, (2) removal of all references to his retirement, (3) reinstatement to his prior position, and (4) elimination of his debt.  AR 293.  He argued that he should not have been found guilty of committing conduct unbecoming of an officer and a gentleman because he had not violated Article 92 or 132 of the U.C.M.J.  AR 293.

On May 13, 2010, the BCNR issued an opinion denying Plaintiff's application for correction of his records.   AR 278-79.  The Board reviewed Plaintiff's application and attachments, his service record, applicable statutes and regulations, and two advisory opinions from Marine Corps Headquarters.  Id.  Both of the advisory opinions concluded that Plaintiff had been properly retired.[7]   The Board stated that Plaintiff needed to "establish the existence of probable material error or injustice," and the evidence failed to meet that burden.  Id.  The Board informed Mr. Miglionico that he could petition to have the Board reconsider its decision upon submission of new and material evidence.  AR 279.   The record does not indicate that Mr. Miglionico asked the Board to reconsider its May 2010 decision.   Just over one year later, Plaintiff filed his complaint in this Court.

## Discussion

## Jurisdiction

The Tucker Act grants this Court jurisdiction to hear claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2011).  The Tucker Act is only a jurisdictional statute.  United States v. Testan, 424 U.S. 392, 398 (1976).  It does not create a stand-alone cause of action, meaning "a plaintiff must identify a separate source of

---

[6]  The time-in-grade waiver allowed Plaintiff to retire as a lieutenant colonel despite the fact that he held the rank for less than three years.  10 U.S.C. § 1370(2)(A) (2011) provides: "In order to be eligible for voluntary retirement under any provision of this title in a grade above major or lieutenant commander, a commissioned officer of the Army, Navy, Air Force, or Marine Corps must have served on active duty in that grade for not less than three years, except that the Secretary of Defense may authorize the Secretary of a military department to reduce such period to a period not less than two years."

[7]  The opinion dated February 25, 2010, stated that the BOI could have found that Plaintiff committed any of the three charges.  AR 295.  It characterized the reliance on Article 133 as "misplaced."  Id.  It also declined to review Plaintiff's claim for reimbursement because DOHA had already done so.  Id.  The second opinion, dated March 10, 2010, found no legal or procedural error in Plaintiff's separation from the Marine Corps.  AR 296.

substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (partial en banc). A statute is money-mandating if it "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." Blueport Co. v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008) (quoting Testan, 424 U.S. at 400). Further, a statute is money-mandating if it expressly or implicitly provides the claimant with the right to recover damages. Blueport, 533 F.3d at 1383 (citation omitted).

In his amended complaint, Plaintiff invokes 37 U.S.C. § 204, the Military Pay Act, and 37 U.S.C. § 474,[8] Travel and Transportation Allowances. It is well established that the Military Pay Act is a money-mandating statute. Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). By statute, a "member of a uniformed service who is on active duty" is entitled to receive basic pay. 37 U.S.C. § 204(a)(1) (2011). If a service member is denied the benefits of his active duty status, he has a cause of action under the Tucker Act. Because Plaintiff seeks compensation for the two years that he was on active duty, this Court has jurisdiction. Furthermore, the Court also has jurisdiction over Plaintiff's monetary claims under 37 U.S.C. § 474. The statute governing travel allowances is a money-mandating statute because it entitles service members called to active duty "to travel and transportation allowances for travel performed or to be performed under orders . . . ." 37 U.S.C. § 474.[9]

Plaintiff's monetary claims are thus within this Court's jurisdiction. Further, while the Court does not have general equity jurisdiction, it has the authority to grant the equitable relief that Plaintiff seeks pursuant to 28 U.S.C. § 1491(a)(2) (2011) because such relief is collateral to the action for monetary relief. See Roth v. United States, 378 F.3d 1371, 1384 (Fed. Cir. 2004) (reviewing a case where the Court of Federal Claims adjudicated a former Air Force major's claim seeking reinstatement, back pay, benefits, and the correction of his military record under the Military Pay Act because the claims for equitable relief were collateral to the action for monetary relief).

The Court has jurisdiction over Defendant's counterclaim under 28 U.S.C. §§ 1503 and 2508 (2011), which expressly give this Court jurisdiction to render judgment on any set-off or demand that the Government seeks from any plaintiff for actions in this Court. See Daff v. United States, 78 F.3d 1566, 1573 (Fed. Cir. 1996) (holding that because the Court of Federal Claims had jurisdiction to hear a plaintiff's challenge to the termination of a contract, it also had jurisdiction to adjudicate the government's counterclaim representing unliquidated progress payments and stating "[p]ursuant to 28 U.S.C. § 2508, the Court of Federal Claims is authorized to enter judgment in favor of the United States against a plaintiff in the amount in which the plaintiff is found to be indebted to the United States as a result of any 'set-off, counterclaim,

---

[8] 37 U.S.C. § 404 was renumbered as 37 U.S.C. § 474 in December 2011. Pub.L. 112-81, Div. A, Title VI, § 631(d)(2), (e)(1), Dec. 31, 2011, 125 Stat. 1460, 1461. The complaint and the parties papers referred to the statute as § 404, but this opinion shall use the current numbering.

[9] Defendant admits that 37 U.S.C. §§ 204 and 474 are money-mandating. Def.'s Supplemental Br. 3-4.

claim for damages, or other demand [which] is set up on the part of the United States against any plaintiff making claim against the United States in said court. . . .'").

Because the Court has jurisdiction over Plaintiff's monetary claims for his temporary living allowances and Defendant's counterclaim encompasses the same monies, the counterclaim is within the Court's jurisdiction.  Id.

**Justiciability**

When a court has jurisdiction to hear a claim, the court can still be prevented from adjudicating the claim if it concerns a nonjusticiable controversy.  Justiciability depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded."  Baker v. Carr, 369 U.S. 186, 198 (1962).  A critical consideration is whether a court can provide the relief sought, especially when granting the relief would intrude into an area over which another branch of government has discretion.  When a claim is nonjusticiable, the Court must dismiss the claim.  Justiciability is a particular concern when reviewing military activities for two reasons.  First, the military is a "specialized community governed by a separate discipline from that of the civilian."  Murphy v. United States, 993 F.2d 871, 872 (Fed. Cir. 1993) (quoting Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953)).  As a result, courts do not interfere with legitimate military matters, and the military does not interfere with judicial matters.  Id.  (citations omitted).  Second, concerns regarding the separations of powers limit the judicial branch's ability to oversee military matters.  Id. at 872-73.  To be mindful of these concerns, courts have held that judicial review of military decisions is limited to situations where the Secretary's discretion is constrained and there are tests and standards to measure the service branch's conduct.  See Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995); Murphy, 993 F.2d at 873.  Further, the Court will not review the merits of a military decision.  Adkins, 68 F.3d at 1323.

Courts can review military decisions when the plaintiff argues that the military did not comply with a governing statute or regulation.  See Roth, 378 F.3d at 1385.  The Court of Federal Claims regularly hears cases concerning military corrections boards, but the review is focused on procedural matters.  See Wells v. United States, 46 Fed. Cl. 178, 183 (2000) (remanding to Army Personnel Command when the Army failed to follow mandatory procedures during a line of duty investigation); French v. United States, 42 Fed. Cl. 49, 55 (1998) (stating the court would not review the evidence and findings of the corrections board to evaluate the board's decision but would determine if it failed to comply with its own directives); Ferrell v. United States, 23 Cl. Ct. 562 (1991) (adjudicating a claim when the plaintiff alleged that the Army did not follow the required procedures during his discharge).  Similarly, courts will consider whether the correction board's decision was adequately supported or justified.  See Rominger v. United States, 72 Fed. Cl. 268, 273 (2006) (remanding a case when the corrections board did not explain why the Army would not reconsider the disability standard it used).

In the case at bar, Plaintiff challenges two distinct decisions of the Marine Corps.  First, Plaintiff argues that DOHA was arbitrary and capricious in its interpretation and application of

37 U.S.C. § 474 and the Joint Federal Travel Regulations.[10]   The Joint Federal Travel Regulations are promulgated by the Department of Defense and apply to uniformed personnel and civilian employees.   Plaintiff argues that DOHA should not have upheld DFAS's determination that he received unauthorized travel reimbursements.   For this claim, Plaintiff's allegations rest upon DOHA's application and interpretation of the military's regulations.   The Court can review the relevant rules and regulations and determine whether the Marines followed them.   Thus, the Court finds that Plaintiff's claims concerning DOHA are justiciable.[11]

Plaintiff also challenges the BCNR's decision to deny his application seeking correction of his records, elimination of the living-allowance related debt, and reinstatement to the Reserves.   Plaintiff challenges the merits of the BCNR's decision to maintain his debt, uphold the BOI's findings, order mandatory retirement, and subsequently deny his request to reinstate him and correct his record.   He seeks three forms of equitable relief: (1) reinstatement to the Marine Corps Reserve with credit for time served, (2) removal of any references to the BOI in his official military personnel file, and (3) removal of any reference to his retirement in his official military personnel file.   For each form of relief sought, the Court must determine if the Court can identify the duty asserted, determine the breach, and grant appropriate relief.   See Murphy, 993 F.2d at 872.

First, Plaintiff faces a barrier in his request for reinstatement.   While a court can review a challenge regarding whether the military followed a particular procedure, "[t]he merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review."   Adkins, 68 F.3d at 1322 (citation omitted).   The BOI, pursuant to U.C.M.J. Article 133, found that Lt. Col. Miglionico engaged in conduct unbecoming of an officer.   Mr. Miglionico does not claim that the Board failed to comply with any relevant statutes or regulations.   Instead, he asserts that the Board's decision was "inconsistent, irreconcilable, and legally insufficient" because he was found guilty of violating U.C.M.J. Article 133 without being found guilty of violating Article 92.   Pl.'s Resp. 19-20.   Article 133 provides: "Any commissioned officer, cadet, or midshipman who is convicted of conduct unbecoming an officer and a gentleman shall be punished as a court-martial may direct."   10 U.S.C. § 933 (2011). Article 133 does not provide this Court with a standard to assess the BCNR's decision.   This is evidenced in the BOI worksheet, which stated Plaintiff had demonstrated "substandard performance of duty" in his "failure to demonstrate acceptable qualities of leadership required of an officer in the member's grade."   AR 338.   This is clearly a personnel matter within the military's discretion, and the Court is not equipped to second-guess what constitutes "acceptable qualities of leadership" for a lieutenant colonel.

Second, Plaintiff's request to remove the BOI from his personnel file is nonjusticiable. Judges do not run the military.   Orloff v. Willoughby, 345 U.S. 83, 93 (1953).   Instead, Congress gave the Secretary of the Navy the authority to correct service members' records when necessary

---

[10]   The Joint Federal Travel Regulations are issued under Title 37 of the United States Code, Department of Defense Directives 1315.07 and 5154.29, and Department of Defense Instructions 1315.18 and 1327.06.

[11]   Defendant does not dispute that Plaintiff's monetary claims are justiciable.   Def.'s Supplemental Br. 7-9.

to correct an error or remove an injustice.  10 U.S.C.A. § 1552(a)(1) (2011).  The Navy has established procedures to govern this process, and the Court can hear a plaintiff's case when he challenges whether those procedures were followed.  For example, in Roth v. United States, the Federal Circuit held that a former Air Force officer's request to correct the officer effectiveness reports in his record was justiciable because the Air Force failed to follow its regulations on the topic.  378 F.3d 1371, 1386 (Fed. Cir. 2004).  Roth stands in firm contrast to Plaintiff's case, where he only argues that the BCNR made the wrong decision without citing a single regulatory violation.  As such, the Court finds that Plaintiff's request to remove references to the BOI from his personnel file is nonjusticiable.  See Voge v. United States, 844 F.2d 776, 781-82 (Fed. Cir. 1988) (vacating the portion of the trial court's decision that reviewed adverse Officer Fitness Reports in her military records because it was a nonjusticiable personnel decision).

Lastly, Plaintiff asks this Court to order the Marine Corps to remove all references to his retirement from his personnel file.  Like his request to remove the BOI from his personnel file, this request is nonjusticiable.  See Voge, 844 F.2d at 781-82.  Once again, Plaintiff does not allege that the BCNR failed to follow a single relevant rule or regulation in considering his retirement.  Instead, he challenges the merits of the decision to retire him.  The Court cannot review the evidence and finding of the BCNR in this regard or evaluate the merits of its decision.  Cf. French, 42 Fed. Cl. at 49 (reviewing the Army Board of Corrections refusal to correct a reduction in the plaintiff's rank when the plaintiff argued that "the Command totally failed to comply with its own directives and Army Regulations").  Absent a violation of a procedural requirement or other regulation, Plaintiff's claim that BCNR erred in refusing to correct his record is nonjusticiable.

Plaintiff further argues that his three claims for relief related to the BCNR are justiciable under a but-for causation theory.  Pl.'s Supplemental Br. 10-12 (Feb. 17, 2012).  Plaintiff argues:

> The MOBCOM overstepped its bounds when it decided to retract Miglionico's allowance.  Subsequently, the DOHA and BOI overstepped their bounds in affirming the MOBCOM's retraction of allowance by determining that Miglionico had not done arm's-length business and was guilty of conduct unbecoming of an officer.  Later, the BCNR decided that Miglionico's convictions and records were true to the records.  All of these decisions arose from a primary decision to take money that was rightfully Miglionico's.  Subsequent agency decisions inevitably became an abuse of discretion, arbitrary, and capricious because they were founded on a violation of law.

Id. at 11.  Plaintiff cites Adkins, 68 F.3d at 1326, and Fisher, 402 F.3d at 1177, in support of this theory.  Plaintiff's but-for argument is unpersuasive for several reasons.  First, Adkins and Fisher found the plaintiffs' claims concerning their military records to be justiciable because there was evidence that the military did not follow required procedures.  In this case there is no evidence that the Navy failed to follow procedures.  While Plaintiff argues that "[t]he military violated its own procedure in a 'creative' interpretation of the [Joint Federal Travel Regulations]," he is in fact challenging the substance of the Navy's decision -- not the procedures used.  Pl.'s Supplemental Br. at 12.  Second, Plaintiff has not established that the Government took "money that was rightfully Miglionico's."  Id. at 11.  Third, the BOI, the BCNR's decision, and the two

advisory opinions to the BCNR were not predicated on DOHA's decision and undertook an independent analysis of the record. AR 278, 280-81, 282. The BOI's analysis includes facts not cited in DOHA's decision -- that Plaintiff never made any actual rental payments to JKMIG, and that the marina where Plaintiff allegedly docked the boat prohibited people from living onboard boats docked at the facility. AR 286-87. Fourth, the timing shows that DOHA's and the BOI's activities were independent. On September 29, 2008, the Navy directed Lt. Col. Miglionico to show cause for retention at the BOI. AR 287. Plaintiff filed his DOHA appeal on November 26, 2008 -- two months after the BOI show cause order. AR 18. The BOI was convened on February 5, 2009, one week before DOHA issued its decision. AR 280. The record shows that the BOI and DOHA undertook separate investigations and issued independent decisions, thereby rebutting Plaintiff's but-for causation theory.

## Standard for Review of DOHA Decision

Under RCFC 52.1, the parties are limited to the administrative record, and the Court makes findings of fact from the record as if it were conducting a trial on a paper record. See Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Under RCFC 52.1, the Court must determine whether a party has met its burden of proof based on the evidence in the record. Id.

As Plaintiff argues, the Court reviews DOHA's decision under the arbitrary and capricious standard. See Bevevino v. United States, 99 Fed. Cl. 461, 465 (2011) (stating that the Office of Personnel Management's[12] decision concerning pay claims could not be set aside "unless there has been an abuse of discretion, or, in other words, unless [the] decision was so arbitrary as to be clearly wrong"); see generally McGrath v. United States, 1 Cl. Ct. 236, 236-37 (1982) ("This court's standard of review in civilian pay cases is limited to determining whether the final administrative appellate decision was in conformance with the Constitution, statutes, and regulations, was not arbitrary or capricious or taken in bad faith, and was supported by substantial evidence.")

## DOHA's Decision Was Not Arbitrary, Capricious, or an Abuse of Discretion

Plaintiff argues that DOHA's interpretation of the Joint Federal Travel Regulation was arbitrary and capricious, an abuse of discretion, and unsupported by substantial evidence. Plaintiff also alleges that DOHA erroneously used an arm's-length analysis when it denied his request for TLA payments.

In 1996, the Department of Defense delegated the authority to settle service members' claims concerning pay, allowances, travel, transportation, and other financial benefits to

---

[12]   The Office of Personnel Management was given the authority to settle claims involving Federal civilian employees' compensation and leave under the same statute (31 U.S.C. § 3702 (2011)) that gave the Department of Defense similar authority over service members' claims.

DOHA.[13]  Claims Settlement Authority Issuance to Defense Office of Hearings and Appeals, 61 Fed. Reg. 50285-01 (Sept. 25, 1996).   DOHA is charged with reviewing requests for reconsideration of decisions from DFAS.  32 C.F.R. § 282 App. D(d)(4).   DOHA's decisions are deemed a final action.  32 C.F.R. § 282 App. E(k).

In this case, DOHA found that Lt. Col. Miglionico violated Joint Federal Travel Regulation U4129-E, which provides: "[n]o cost for lodging is allowed if a member stays with friends/relatives while [on temporary duty], even if payment of lodging is made to the friend/relative."  Plaintiff argues that DOHA was incorrect when it found that he violated this provision because he rented the boat from JKMIG -- a corporation -- and not a friend or relative. Plaintiff asserts that a corporation does not fall within Joint Federal Travel Regulation U4129's prohibitions and invokes state and federal laws governing corporations.  AR 4-5, 9-10, 20. DOHA did not disagree with Plaintiff's contention that JKMIG is a separate and distinct entity for tax purposes.   However, it found that for the purposes of the Joint Federal Travel Regulations, it did not deserve such treatment because it was a closely-held corporation acting as Plaintiff's agent.   AR 20.   In short, DOHA correctly found that regardless of JKMIG's legal status as a corporation, Plaintiff still violated the Joint Federal Travel Regulations' fundamental prohibition -- renting from friends or relatives.  DOHA provided a thorough, well-reasoned explanation for its interpretation of the regulation.  See AR 5-6, 16-21.  Specifically, DOHA stated that the purpose of the prohibition is to prevent abuse in connection with claims involving lodging with friends or family.  AR 5 (citing DOHA Claims Case No.  040020503 (Feb. 18, 2004); 60 Comp. Gen. 57 (1980); and B-199683, Feb. 24, 1982).  DOHA fully articulated the reasoning behind its decision, explaining that the per diem allowance was intended to authorize service members for additional expenses while on active duty, but Lt. Col. Miglionico did not incur any such expenses because he lived on a yacht that he himself owned through his corporation.  AR 5-6.

Plaintiff also argues that DOHA erred in applying the arm's-length transaction standard to his rental agreement.  However, nothing in the Joint Federal Travel Regulations bars DOHA from using this standard, and DOHA's use of the arm's-length analysis was a reasonable way to apply the Regulations.  Other agencies have imposed the same standard in reviewing similar claims.  The Comptroller General of the United States imposed the arm's-length requirement when a Department of Education employee sought reimbursement under a regulation that allowed reimbursement on an actual expense basis for a private apartment instead of a hotel. Matter of Andres Tobar, B-209109, 1982 U.S. Comp. Gen. Lexis 66, *4 (Dec. 15, 1982) (denying reimbursement when plaintiff employee did not provide evidence that the apartment was customarily rented or that he was engaged in a "purely business arrangement").

[13] In 1995, Congress transferred the authority to settle financial management claims from the Comptroller General to the Director of the Office of Management and Budget ("OMB"). Pub. L. 104-53, § 211, 109 Stat. 514, 535 (1999).  The OMB then transferred the authority to resolve service members' claims to the Department of Defense.  61 Fed. Reg. 50285-01 (Sept. 25, 1996).

**Defendant's Counterclaim**

In its counterclaim, Defendant seeks $51,022.20, representing reimbursements Plaintiff received for travel and lodging from August 4, 2006, through June 6, 2008.  Answer ¶¶ 30-36. Defendant asserts that Plaintiff was not entitled to receive the reimbursements under the Joint Federal Travel Regulations.

Defendant has the burden of proof on its counterclaim.  Alli v. United States, 83 Fed. Cl. 250, 276 (2008).  Defendant has met its burden.  As shown in the Administrative Record, DOHA conducted a thorough review and analysis of Plaintiff's lodging and travel reimbursements.  AR 3-6, 16-21.  DOHA determined that Plaintiff was not entitled to reimbursement for expenses associated with renting living quarters from his closely held corporation.  In upholding DOHA's decision, the Court finds that Plaintiff was not entitled to the allowances that he received for lodging.  Accordingly, Plaintiff must repay the funds that he wrongfully received, which are evidenced in the Travel Voucher Summaries in the record.  AR 107-52.

## Conclusion

Defendant's motion for judgment on the Administrative Record is **GRANTED**, and Plaintiff's motion is **DENIED**, consistent with the following rulings.  Plaintiff's claim for repayment of $8.295.30 is **DENIED**, and Defendant's counterclaim for $51,022.20 is **GRANTED**.  The Court declines to exercise jurisdiction over Plaintiff's nonjusticiable claims concerning BCNR's actions, and said claims are **DISMISSED**.  As a result, Plaintiff's claims for (1) removal of all references to the BOI in his official record; (2) removal of all references to Plaintiff's retirement in his official record; and (3) reinstatement to the Reserves, are **DISMISSED**.

The Clerk of Court is directed to enter judgment against Plaintiff in the amount of $51, 022.20, representing Defendant's counterclaim.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**JUDGE**